# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>ProAir Holdco, LLC, et al.,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 22-11194 -LSS<br><br>**Objection and Overbid Deadline: January 26, 2023 at 4:00 p.m. (ET)**<br>**Hearing Date: February 1, 2023 at 10:30 a.m. (ET)** |

### CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF AN ORDER: (A) APPROVING ASSET PURCHASE AGREEMENT; (B) AUTHORIZING SALE OF ESTATE ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363(b) AND (f); AND (C) GRANTING RELATED RELIEF

Jeoffrey L. Burtch, in his capacity as chapter 7 trustee (the "Trustee") for the bankruptcy estates (the "Estates") of the above-captioned debtors (the "Debtors"), files this motion (the "Motion") pursuant to 11 U.S.C. §§ 105 and 363 for entry of an order: (A) approving the Asset Purchase Agreement substantially in the form attached as Exhibit A hereto (the "APA"); (B) authorizing the sale of certain assets of the Estates free and clear of liens, claims, and encumbrances; and (C) granting related relief. In support of the Motion, the Trustee respectfully states as follows:

### JURISDICTION, CORE NATURE AND VENUE

1.  The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction to consider this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.  The statutory predicates for the relief requested herein are sections 105 and 363 of

---

[1] The Debtors in these cases are the following entities (the respective case numbers for each estate follows in parentheses**):** ProAir Holdco, LLC (22-11194-LSS), ProAir Intermediate Holdco, LLC (22-11195-LSS), ProAir LLC (22-11196-LSS), American Cooling Technology, LLC (22-11197-LSS), Bus Air, LLC (22-11198-LSS), Evans Tempcon Delaware, LLC (22-11199-LSS).

title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

3. Pursuant to Local Rule 9013-l(f), the Trustee consents to the entry of a final order with respect to this Motion if it is determined that the Court lacks adjudicatory authority under Article III of the United States Constitution to enter such final order absent consent of the parties.

## BACKGROUND[2]

4. On November 16, 2022 (the "Petition Date"), the Debtors filed petitions under Chapter 7 the Bankruptcy Code, thereby commencing the above-captioned cases (the "Chapter 7 Cases").

5. On or about the Petition Date, the Trustee was appointed interim trustee in the Chapter 7 Cases. The meeting of creditors was held and concluded on December 28, 2022, and the Trustee now serves as trustee pursuant to 11 U.S.C. § 702(d).

## Preliminary Statement Regarding Sale Process

6. As set forth in further detail below, the Trustee is seeking approval of a private sale of certain assets of the Estates. While a more traditional two-step sale process, with Court-approved bidding procedures and a period of time accommodate due diligence and solicit bids, may be the more typical means of maximizing value, under the present circumstances such a process is not feasible.

7. One factor that complicates sale efforts in these Chapter 7 Cases is that two

---

[2] Neither the Trustee nor his professionals have any personal knowledge regarding the Debtors' assets or business operations, and the background information provided in this Motion is based on the Trustee's investigation of the Debtors' financial condition and information gleaned from the filings in these cases and documents otherwise made available to the Trustee, testimony at the section 341 meeting of creditors, and discussions with former agents of the Debtors and other parties in interest. While the Trustee has made reasonable efforts to ensure the accuracy of the information provided herein, he makes no representations regarding the accuracy of any such information.

unrelated creditors have first priority security interests in different groups of assets, and, in light of their different approaches to these cases, a single sale of substantially all of the Estates' assets is impracticable.

8. Berkshire Bank ("Berkshire") has a senior interest in certain collateral, including the Debtors' inventory, accounts, and the proceeds thereof (the "Berkshire Priority Collateral"). After declining the Trustee's request to participate in an orderly section 363 sale process and being granted relief from the automatic stay during the first few weeks of these Chapter 7 Cases, Berkshire is proceeding with a sale of its collateral under Article 9 of the Uniform Commercial Code. *See* Order Approving Stipulation By and Between Berkshire Bank and Chapter 7 Trustee Modifying the Automatic Stay (D.I. 29).

9. Crystal Financial SBIC LP ("Crystal") has a senior interest in substantially all of the assets of the Estates other than the Berkshire Priority Collateral, including equipment, machinery, and general intangibles.

10. While Crystal has worked closely with the Trustee and agreed to the sale of its collateral through a section 363 sale, Berkshire is proceeding independently. The fact that liquidation is occurring on two separate tracks poses certain difficulties in coordination of efforts between and among Berkshire, Crystal, and the Trustee to maximize value, but the Trustee believes that the sale proposed herein promote such coordination.

11. Also relevant to the need for an expeditious sale process is the fact that the Purchased Assets (as defined in the APA) are all stored at various properties that were the subject of a motion for approval of the rejection of leases. Due to lack of available funding, the Trustee had no realistic alternative but to reject the Debtors' unexpired leases to stop the accrual of administrative rent, and on December 30, 2022, this Court entered an order approving the

rejection of certain of the Debtors' leases of nonresidential real property (except for one lease that expired by its terms on December 31, 2022). With respect to three of the premises, the Trustee has entered into stipulations with the respective landlords providing the Estates access to estate property located thereon for a limited term for the purpose of conducting the sale process contemplated herein, but the duration of those stipulations is not long enough to allow for any sort of extended marketing and sale period. Specifically, the right of access to the Riverside, California premises only runs through February 15, 2023.

12. In addition, the insurance on the Purchased Assets will expire on or about February 11, 2023, and the value that the Estates are likely to realize from the Purchased Assets is such that the cost of extending insurance coverage is not commercially warranted – nor do the Estates have any funding to extend the insurance.

13. Finally, because the Trustee has surrendered possession of the locations where the Purchased Assets are stored, he has no way of ensuring the security of those locations. While the Debtors' insurance runs through February 11, 2023, the inability to secure and control the premises poses a real risk of loss.[3] In fact, on January 3, 2023, the Trustee was advised that a number of tools and aluminum plates had been stolen from the Haslet, Texas location. A report has been made to the local police and the Trustee is reviewing the matter, including the availability of insurance to cover the loss.

14. At present, the only unencumbered assets of significant value are the Real Property and the Vehicles and Trailers (as defined in the APA), which are included in the

---

[3] It should be noted that Berkshire is currently in possession of certain of the Debtors' former leased locations under agreements with the landlords for a limited duration (generally 30-60 days). Berkshire has indemnified the Estates from any loss suffered from and after the date on which it takes possession of each of the locations.

Purchased Assets.[4] By selling these assets immediately, the Trustee will be able to avoid what otherwise would be significant carrying costs, such as taxes, insurance, costs of securing and transporting the Vehicles and Trailers, and commissions, and any further risk of loss.

15. Based on discussions with a brokers and liquidators with knowledge of the relevant markets and negotiations with a number of potential bidders, the Trustee has reasonably concluded that the Estates' portion of the sale proceeds received under the APA is equal to or greater than the net recovery that might reasonably be expected if those assets were marketed separately.

16. In short, due to the competing interests of secured creditors, the limited scope of unencumbered assets, and lack of available funding, it is the Trustee's business judgment that proceeding with a private sale (subject to potential competing bids as described below) is critical to the efficient administration of these Chapter 7 Cases and is in the best interests of the Estates.

## Debtors' Business and Proposed Sale

17. Prior to the Petition Date, the Debtors designed, manufactured, and installed heating, ventilation, and air conditioning (HVAC) systems in various vehicles, including buses, recreational vehicles, luxury coaches, delivery vans, fire trucks, and ambulances.

18. The Debtors' operations were conducted primarily out of leased facilities in Riverside, California; Haslet, Texas; Tulsa, Oklahoma; and Elkhart, Indiana.

19. Since the Petition Date, the Trustee, through counsel, has had extensive communications with various parties in interest, including certain of the Debtors' agents, secured creditors, equipment lessors, landlords, a broker with knowledge of the real property that is to be

---

[4] Whether or not the Vehicles and Trailers and the Real Property may have been pledged as collateral to secure one or more debts, it does not appear that there are any perfected security interests in any of those assets, and they are denominated as unencumbered for purposes of this Motion.

sold under the APA, a vehicle dealer with knowledge of the value of the types of vehicles owned by the Debtors, and numerous parties expressing an interest in acquiring or liquidating assets of the Estates.

20.  After engaging in negotiations with four (4) potential purchasers of substantially all of the Estates' assets, the Trustee determined it would be in the best interests of the Estates to sell the Purchased Assets to O2Cool Manufacturing, LLC ("Buyer") for a purchase price of $1.2 million (the "Purchase Price").

21.  Based on discussions with the secured creditors and other parties in interest, the Trustee proposes to allocate the Purchase Price as follows:

   a.  $254,333.33 for the automobiles, trucks, vans, and trailers;

   b.  $262,000.00 for the one (1) Trumpf TruBend 5085 Press Brake, the one (1) 000116 – Trumpf Brake Press, and the one (1) 000117 – Trumpf Laser;

   c.  $200,000.00 for the real property located in Tulsa, Oklahoma; and

   d.  $483,666.67 for the remainder of the Purchased Assets.

22.  In large part, the Purchased Assets consist of machinery, tooling, molds, equipment, and vehicles that are stored at property formerly leased by the Debtors. The Purchased Assets are also insured under an insurance policy that will terminate on February 11, 2023.

23.  In order to avoid the risk of incurring excessive and unwarranted insurance and storage expenses, the Trustee is seeking to sell the Purchased Assets as quickly as is reasonably practicable, while still affording other bidders an additional window within which to submit higher or otherwise better offers.

24.  Based on a review of the Debtors' schedules and other available records, it appears that all of the Purchased Assets are property of the ProAir, LLC Estate.

25. According to the Debtors' schedules and other available records, ProAir, LLC granted a security interest in substantially all of its personal property to the following creditors: (a) Berkshire; (b) Crystal; (c) Crystal Financial LLC; (d) William S. Karol; and (e) William S. Karol Family Trust. Berkshire's security interest is senior to those of the other creditors named herein, except as provided in the intercreditor agreement referenced below.

26. Pursuant to the terms of that certain Amended and Restated Intercreditor Agreement dated February 11, 2022, Berkshire subordinated its security interest in all of the Debtors' personal property other than accounts, inventory, and the proceeds thereof to Crystal. None of the Debtors' accounts, inventory, or the proceeds thereof are included in the Purchased Assets, and Crystal therefore has a first priority security interest in the Purchased Assets.

27. According to the Debtors' schedules, Crystal's secured claim is over $4.3 million. While all of the Debtors' secured scheduled debts are characterized as "unliquidated," it does not appear that there is any dispute that Crystal is actually owed over $5 million.

28. According to the Debtors' schedules, the net book value of the collateral in which Crystal has a first priority security interest is just over $2 million. Based on the available records and communications with Crystal and other parties in interest, and offers and other indications of value received to date, it is clear to the Trustee that Crystal is significantly undersecured, and any junior interests in the Purchased Assets are essentially without value.

29. The Purchased Assets include certain equipment and machinery provided to the Debtors pursuant to a number of purported leases with Trumpf Finance ("Trumpf"). Upon a review of the relevant agreements, it appears that these contracts are not "true leases," but are instead in the nature of secured transactions. Perhaps out of an awareness of the true legal nature of the transactions, Trumpf filed a UCC financing statement, and therefore holds a perfected

security interest in the Trumpf equipment. The Trustee has agreed to pay Trumpf $262,000.00 out of the Purchase Price in satisfaction of Trumpf's interest in the Purchased Assets. The Trustee believes that the amount payable to Trumpf is the full amount that remains due to Trumpf, including a reasonable amount for contractually allowable legal fees, as well as the approximate value of the property subject to Trumpf's security interest, net of costs of sale.

30. Despite being undersecured, in order to facilitate the prompt sale of its collateral, Crystal has agreed to the sale of the Purchased Assets so long as it receives at least $483,666.67. As a result of Crystal's agreement and the amount of Trumpf's claim described herein, the Estate of ProAir, LLC will receive $454,333.33 out of the Purchase Price to be paid under the APA, which is equal to the value of the Vehicles and Trailers and the Real Property.

31. With the exception of the Vehicles and Trailers and the Real Property, the Purchased Assets are fully encumbered, and the Trustee has agreed to pay a portion of the purchase price equal to the amount allocated to the encumbered assets to Crystal and Trumpf. Under the APA, the ProAir, LLC Estate will recover the full amount allocated to the unencumbered assets.

32. The sale of Crystal and Trumpf's collateral will therefore immediately benefit the estates by facilitating a sale under which the ProAir, LLC Estate will realize at least $454,333.33. Furthermore, the Trustee and Crystal have agreed to share in any increased purchase price paid by reason of a Competing Bid (as defined below). Should the Trustee receive any Competing Bid(s), and thereafter receive more than $1.2 million for the Purchased Assets, the Estate will be entitled to one-third of the purchase price in excess of $1.2 million, and the other two-thirds will be paid to Crystal on account of its secured claim.

## C. Terms of the APA and Consideration of Competing Bids

33. The principal terms of the APA are summarized as follows:

| Agreement Provision | Summary Description |
|---|---|
| Seller | Jeoffrey L. Burtch, solely in his capacity as chapter 7 trustee for the bankruptcy estates of the Debtors. |
| Buyer | O2Cool Manufacturing, LLC |
| Purchase Price | Cash in the amount of $1,200,000.00, payable as follows:<br><br>a. Deposit in the amount of $120,000.00, which was paid upon execution of the APA; and<br><br>b. $1,080,000.00 payable at Closing.<br><br>(*See* APA at §§ 1, 2) |
| Purchased Assets | All of the Estates' right, title, and interest in and to the following:<br><br>a. All intellectual property and rights to sue for past or future infringement, misappropriation, or disclosure of any rights in such intellectual property, and rights under non-disclosure agreements and/or confidentiality agreements to the extent necessary to the enforcement of rights in the intellectual property;<br><br>b. The automobiles, vans, trucks, and trailers identified in Exhibit A to the APA (collectively, the "Vehicles and Trailers");<br><br>c. The real property legally described in Exhibit B to the APA (the "Real Property");<br><br>d. All machinery, tooling, molds, and equipment located at the Debtors' facilities in Haslet, Texas; Elkhart, Indiana; Riverside, California; and Tulsa, Oklahoma; and<br><br>e. Any rights of the Debtors and the Estates to pursue claims, including indemnification claims, against third parties (including any secured lenders in possession or control of the items identified in paragraph 3(d)), solely to the extent that these claims pertain to the extent, existence, theft, or removal of any assets of the type described in this paragraph 3 that occurred after the Petition Date.<br><br>(*See* APA at § 3) |
| Excluded Assets | All assets not specifically included in the Purchased Assets, including, but not limited to, the following:<br><br>a. All inventory;<br><br>b. All cash, accounts receivable, deposit accounts, notes receivable, and other rights to payment, and any security, lien, claim, remedy, or other right related to any of the foregoing; |

11

| Agreement Provision | Summary Description |
|---|---|
| | c. Except for those arising out of past or future infringement, misappropriation, or disclosure of any rights in intellectual property as provided above, all rights to any claims and causes of action of any kind, whether sounding in law or in equity, including, but not limited to, all avoidance actions under chapter 5 of the Bankruptcy Code, and all rights in and to any insurance policy or policies covering such claims and the proceeds thereof; and<br><br>d. Any books and records Seller deems necessary for the administration of the Bankruptcy Cases.<br><br>(*See* APA at § 4) |
| Sale Order | The APA requires entry of the Sale Order that includes a waiver of the stay imposed under Bankruptcy Rule 6004(h).<br><br>(*See* APA at §§ 5, 13) |
| Termination Events | The APA may be terminated by the Trustee or Buyer, as applicable, upon the occurrence of the events described in Section 10 of the APA.<br><br>(*See* APA at § 10) |
| Break-Up Fee | The APA provides that the Trustee may entertain competing bids for the Purchased Assets; *provided, however,* that, in the event that the Trustee sells the Purchased Assets to a third party, the Buyer will be entitled to payment of a Break-Up Fee in the amount of $36,000.00, with such amount to be paid out of the proceeds of such alternate sale.<br><br>(*See* APA at § 14) |

34. The APA contains the following terms, conditions and provisions that are to be highlighted in this Motion pursuant to Local Rule 6004-1(b):

   a. **Private Sale**. While approval of a competitive bidding process is not being sought in advance of the sale hearing, the Trustee will consider any competing offers that might be made by no later than the deadline for objections to this Motion.

   b. **Deadlines**. Either party may terminate the APA if the Sale Order is not entered by February 6, 2023. (*See* APA at § 10)

   c. **Deposit**. The APA requires payment of a deposit in the amount of $120,000.00, which shall be refunded to Buyer in the event that the APA is terminated for any reason other than the Buyer's breach. (*See* APA at §§ 3, 11)

d. **Relief from Bankruptcy Rule 6004(h)**. The APA requires that the Sale Order include a waiver of the stay as provided in Bankruptcy Rule 6004(h). (*See* APA at § 13)

35. Due to lapsing insurance coverage and the potential for burdensome administrative expenses, it is critical that the sale of the Purchased Assets close by no later than February 11, 2023. The Trustee is therefore not seeking approval of formal bid procedures, but does intend to entertain other offers ("Competing Bids") that are submitted before the deadline for objections to this Motion.

36. To ensure an efficient bidding and sale process, the Trustee hereby gives notice that any Competing Bids[5] must meet the following requirements:

   a. The Competing Bid is for an amount that is not less than $1,261,000.00, which is an amount equal to the Purchase Price, *plus* the Break-Up Fee of $36,000, *plus* an additional overbid amount of $25,000.00;

   b. The Competing Bid is accompanied by a cash deposit equal to 10% of the proposed purchase price and evidence that the Trustee, in his sole discretion, deems sufficient to establish that the proposed purchaser has the financial means to promptly close on the sale of the Purchased Assets; and

   c. The Competing Bid is submitted in the form of an irrevocable, executed purchase agreement that is substantially similar to the APA and is accompanied by a redlined draft that highlights all changes that have been made to the APA,[6] or otherwise includes terms that the Trustee, in his sole discretion, deems more favorable than those of the APA.

37. Under the circumstances of these cases, the Trustee has reasonably determined that a private sale, rather than a formal competitive auction process, is necessary to maximize the value of the Purchased Assets, and by this Motion seeks approval of such private sale. Notwithstanding the foregoing, the Trustee reserves the right to seek approval of a sale to a

---

[5] The Trustee reserves the right to consider any Competing Bid, and may seek approval of such Competing Bid if he deems it to be in the best interests of the Estates, even if the Competing Bid deviates from the form suggested here.

[6] Upon request made to the undersigned counsel, the APA will be provided in Microsoft Word format to any party interested in submitting a Competing Bid.

different purchaser if a higher and better offer is made by no later than the January 26, 2023 deadline for filing objections to this Motion. This Motion is being served on all parties that are known to have expressed any interest in purchasing assets of the Estates, so all such parties will have a fair opportunity to submit Competing Bids.

38. As highlighted above, in the event that there is one or more Competing Bid, and the Purchased Assets are sold for more than $1.2 million, the purchase price in excess of $1.2 million will be divided between the Trustee and Crystal, with the Trustee receiving one-third of such excess and Crystal receiving the other two-thirds.

## Summary of Relief Requested

39. By this Motion, the Trustee seeks the entry of the Sale Order, substantially in the form attached hereto as Exhibit B: (a) approving the APA; (b) authorizing the sale of the Purchased Assets free and clear of liens, claims, interests, and encumbrances; and (c) granting certain related relief.

## Analysis

**A. The Trustee requests authority to sell the Purchased Assets outside of the ordinary course of business.**

40. Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Courts have held that proposed sales of property pursuant to section 363(b) should be approved upon a finding that the decision to enter into the transaction represents a reasonable business judgment. *See, e.g., In re Delaware & Hudson Ry. Co.,* 124 B.R. 169, 176 (Bankr. D. Del. 1991) (holding that a court must be satisfied that there is a "sound business reason" justifying sale of assets); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335 (Bankr. D. Del. 1987) (stating that the elements necessary for approval of a section 363 sale are "that the proposed sale

14

is fair and equitable, that there is a good business reason for completing the sale and the transaction is in good faith").

41. Sales of property outside of the ordinary course of business may be by private sale, as opposed to public auction. *See* Bankruptcy Rule 6004(f)(1).

42. The Trustee believes that the sale of the Purchased Assets on the terms set forth in the APA represents a prudent and proper exercise of the Trustee's business judgment and is supported by sound business reasons.

43. The Purchase Price is the result of good faith, arm's length negotiations, and, based on communications with various parties in interest, the Trustee believes that the Purchase Price is fair and reasonable.

44. The Trustee has reason to favor proceeding by way of private sale. The Buyer has submitted an offer that is superior to the only other offers that had been received as of the date of this Motion, and which appears superior to any other offers that the Trustee might reasonably expect.

45. Because the Purchased Assets are currently stored at properties to which the Estates' continued access is limited in duration, any delay in closing on the sale might result in increased administrative expenses, and there is no reason to believe that there is any prospect that such increased administrative expenses might be offset by a higher purchase price.

46. Furthermore, the majority of the Purchased Assets are either leased or subject to security interests, and a substantial portion of the sale proceeds will have to be paid to third parties with interests in the Purchased Assets. The recovery for the Estates is therefore already limited, and the negative impact of any increased administrative expenses is particularly pronounced. Under these circumstances, the Trustee believes that his best course of action is to

LEGAL\60971049\1

propose a private sale to the Purchaser, subject to any higher and better offers that might be made by the objection deadline, and to close as promptly as practicable after entry of the order approving the APA.

47. As an additional test of the fairness of the APA, the Trustee will consider Competing Bids through the date by which objections to this Motion are due. If the Trustee determines that a timely-submitted Competing Bid is on terms that are more favorable than those under the APA, and neither the Buyer or any other potential purchaser is willing to make a higher and better offer, the Trustee will seek approval of the sale to the party submitting such Competing Bid.

48. If no additional bids are received by the Trustee, then he will proceed with the hearing as scheduled and request that the Court approve the APA for the reasons set forth above.

49. Under the process contemplated by the Trustee, the only material difference between a sale pursuant to the APA and a sale pursuant to a Competing Bid will be a greater purchase price, and thus no party in interest in the Chapter 7 Cases would be adversely affected by approval of the alternate sale. The Trustee therefore submits that no further notice is necessary before approval of a sale pursuant to a Competing Bid.

**B. The Trustee requests that the sale be free and clear of all liens, claims, rights, and encumbrances.**

50. Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if -
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

51. Section 363(f) is drafted in the disjunctive. Thus, satisfaction of any one of the elements would permit sale of the Purchased Assets free and clear of all liens, claims, rights, and encumbrances (collectively, "<u>Interests</u>"), *See, e.g., Citicorp Homeowners Servs., Inc. v. Elliot*, 94 B.R. 343, 345 (E.D. Pa. 1988).

52. The Trustee believes that, as to each and every entity or person having any Interest in the Purchased Property, at least one of the five criteria set forth in section 363(f) of the Bankruptcy Code will apply.

53. First, there are no perfected Interests encumbering either the Vehicles and Trailers or the Real Property. To the extent that any Interests in those assets were granted, therefore, such Interests would be avoidable under section 547 of the Bankruptcy Code, and therefore subject to bona fide dispute.

54. In a similar vein, Trumpf's interest in the Purchased Assets is nominally that of lessor, when, as a legal matter, its interest is actually that of a secured creditor. To the extent that the nature of its interest is relevant, Trumpf's interest as a "lessor" is in bona fide dispute, and the Trustee can sell free and clear of that interest

55. Trumpf's actual interest in the Purchased Assets is that of a secured creditor. Trumpf will be paid the full amount of its claim, and, while it has not yet consented to the sale, the Trustee expects that Trumpf will accept the payment proposed hereunder, or a separate agreement will be reached before the hearing on the Motion. Even if no agreement is reached, if

Trumpf is in fact paid in full, the Trustee may sell free and clear of Trumpf's security interest under section 363(f)(1) or (5).

56. With respect to the remaining assets, Crystal has consented to the sale. Berkshire has a senior security interest in substantially all of the Debtors' assets other than the Purchased Assets, but has subordinated its interest in the Purchased Assets to Crystal. Given the fact that Crystal is owed over $5 million, there can be no reasonable doubt that Berkshire's interest in the Purchased Assets is without value, and the Trustee expects that Berkshire will not oppose the sale of the Purchased Assets free and clear of its Interests. Largely for the same reason, the Trustee also believes that the other scheduled secured creditors (Crystal Financial LLC, William S. Karol, and the William S. Karol Family Trust) also will not oppose the sale. If any of these junior secured creditors disagree, then they can submit a Competing Bid.

57. The Trustee therefore anticipates that the sale will satisfy the second element of section 363(f). *See, e.g., Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, secured creditor deemed to have consented under section 363(f)(2)); *Pelican Homestead & Sav. Ass'n v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

58. Accordingly, the Trustee requests that the Court order the sale of the Purchased Assets free and clear of all Interests to the fullest extent permitted under section 363(f) of the Bankruptcy Code.

C. **Waiver of Rule 6004(h) Stay**

59. As noted above, insurance protecting against damage to the Purchased Assets will lapse on February 11, 2023, and the Purchased Assets are currently stored at leased property. Any delay in closing may therefore result in either risk of loss or increased administrative

expenses that would significantly reduce the sale proceeds available for the benefit of the Estates.

60. Because time is of the essence for closing, the Trustee is seeking a waiver under Fed. R. Bankr. P 6004(h) as part of this Motion.

## Notice

61. The Trustee is serving the Motion on: (a) the Office of the United States Trustee; (b) counsel for Debtors; (c) counsel for the Buyer; (d) any creditors identified as secured in the Debtors' schedules; (e) all taxing authorities identified in the Debtors' schedules; (f) all creditors that have filed proofs of claims; (g) all parties known to the Trustee to have expressed any interest in purchasing any assets of the Estates; and (h) all parties in interest who requested notice pursuant to Bankruptcy Rule 2002.

62. The Trustee submits that notice as described herein constitutes sufficient notice, and respectfully submits that no further notice is necessary.

## No Prior Request

63. No prior request for the relief sought herein has been requested from this Court or any other court.

## Conclusion

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter the Sale Order substantially in the form attached hereto as <u>Exhibit B</u>: (a) Approving the APA; (b) authorizing the Sale of the Purchased Assets free and clear of liens, claims, interests, and encumbrances; and (c) granting certain related relief.

Dated: January 5, 2023　　　　　　　　　COZEN O'CONNOR

　　　　　　　　　　　　　　　　　　　　<u>/s/ Mark E. Felger</u>
　　　　　　　　　　　　　　　　　　　　Mark E. Felger (DE 3919)
　　　　　　　　　　　　　　　　　　　　Gregory F. Fischer (DE 5269)
　　　　　　　　　　　　　　　　　　　　1201 N. Market Street, Suite 1001
　　　　　　　　　　　　　　　　　　　　Wilmington, DE 19801
　　　　　　　　　　　　　　　　　　　　T: (302) 295-2000
　　　　　　　　　　　　　　　　　　　　mfelger@cozen.com
　　　　　　　　　　　　　　　　　　　　gfischer@cozen.com

　　　　　　　　　　　　　　　　　　　　*Counsel to Jeoffrey L. Burtch, Chapter 7 Trustee*